IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AUDREY G.,[1]                                         No. 3:22-cv-324-JR

                Plaintiff,                          OPINION & ORDER

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                Defendant.


RUSSO, Magistrate Judge:

      Plaintiff Audrey G. brings this action for judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying her application for Title II

Disability Insurance Benefits and Title XVI Supplemental Security Income under the Social

Security Act ("the Act"). All parties have consented to allow a Magistrate Judge to enter final

orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c).

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the nongovernmental party in this case.

ECF No. 17. For the reasons set forth below, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

## PROCEDURAL BACKGROUND

Born in February 1980, plaintiff alleges disability beginning June 30, 2015, with a date last insured of September 30, 2018, due to "lumbar stenosis with neurogenic claudication, herniated lumbar discs, degenerative disc disease, discoid lupus and systemic lupus erythematosus, rheumatic arthritis, seizure disorder, chronic pain, migraine, radicular pain of both lower extremities, and depression." Tr. 66-67, 107. Her application was denied initially and upon reconsideration. Tr. 64-143. On November 19, 2020, plaintiff appeared at an administrative hearing before Administrative Law Judge ("ALJ") Vadim Mozyrsky. Tr. 36-63. On February 16, 2021, the ALJ issued a decision finding plaintiff not disabled. Tr. 14-35. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five-step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since June 30, 2015, the alleged onset date. Tr. 19. At step two, the ALJ determined the following impairments were medically determinable and severe: "degenerative disc disease, rheumatoid arthritis, lupus, right ankle fracture with repair, left shoulder degenerative joint disease, and obesity." Tr. 20. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 21.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how her impairments affected her ability to work. The ALJ resolved that plaintiff had

the residual function capacity ("RFC") to perform light work as defined in 20 C.F.R. §

404.1567(b) except:

> [S]he could frequently balance and occasionally stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds. She can frequently engage in overhead reaching with her left (non-dominant) upper extremity, but cannot tolerate any exposure to hazards, such as operating heavy machinery, driving, and unprotected heights. Beginning on June 19, 2017, the claimant was further limited to standing or walking for only 4 hours in an 8-hour workday and to only occasional overhead reaching with her bilateral upper extremities.

Tr. 23.

At step four, the ALJ found plaintiff unable to perform past relevant work. Tr. 29. At step

five, the ALJ determined that plaintiff was capable of performing jobs existing in significant

numbers in the national economy such as routing clerk, marker, and router. Tr. 29-30. The ALJ

therefore found plaintiff not disabled. Tr. 30.

## DISCUSSION

Plaintiff argues the ALJ committed four harmful errors in his written opinion. She

contends the ALJ erred by (1) improperly rejecting her symptom testimony, (2) failing to

conduct an adequate evaluation of whether her limitations met or equaled Listing 14.02 at step

three, (3) improperly evaluating Dr. McCormack and FNP Victoria LaPorte's medical opinions,

and (4) formulating an incomplete RFC, resulting in error at step five. For the reasons that

follow, the Court finds the ALJ did not err, and affirms.

### I. Symptom Testimony

Plaintiff contends the ALJ erred by discrediting her subjective symptom testimony about

pain, stiffness, and fatigue without clear and convincing reasons for doing so. Pl.'s Br., ECF No.

17 at 22-26. When a claimant has medically documented impairments that could reasonably be

expected to produce some degree of the symptoms complained of, and the record contains no

affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

Plaintiff testified she can walk only 15-20 minutes before needing to rest. Tr. 316. She wrote that she is limited by pain, weakness, stiffness, and fatigue. Tr. 311. Given her issues, she shared that she often does not get to the restroom in time. Tr. 326. She spends a lot of her time in bed. Tr. 332. During her hearing, plaintiff testified that she could stand ten minutes before her

legs go numb and she often has to lean on counters. Tr. 44. She further shared that she often needs to lie down for an hour at a time. Tr. 52.

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 24. However, the ALJ concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 24. Specifically, the ALJ found plaintiff's symptom allegations were inconsistent with objective medical evidence, and that plaintiff's daily activities conflicted with her testimony. Tr. 24-27.

The ALJ reasonably discounted aspects of plaintiff's allegations of pain, weakness, stiffness, and fatigue as inconsistent with the record. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. § 416.929(c)(2). At the hearing, plaintiff testified about having constant pain, along with stiffness and fatigue, that severely limited her ability to sit, walk, and lift. *See, e.g.*, Tr. 42, 44-45, 311, 316. The ALJ juxtaposed these allegations with multiple treatment notes that conflicted with her testimony about the severity of these symptoms. For example, following her back surgery in early 2018, the ALJ noted that plaintiff successfully managed her back pain with medication. Tr. 1968, 1972. Plaintiff also repeatedly characterized her pain as only moderate, particularly when she took medication. Tr. 318, 385, 394, 402, 406, 426, 429, 432, 495, 832. In addition, while records confirmed that plaintiff had physical problems, the ALJ also reviewed evidence showing that, many times, plaintiff functioned relatively well. She walked with a normal gait, had normal or almost normal strength, had full range of motion in her musculoskeletal system, and/or was in no acute distress. Tr. 497-98, 503, 664, 705, 834-35, 840, 940, 1021, 1035, 1082, 1202, 1243,

1298, 1323, 1503, 1532, 1557, 1694, 1732, 1752. In sum, these many unremarkable reports amount to substantial evidence supporting the ALJ's decision to discount plaintiff's testimony about pain, weakness, stiffness, and fatigue because her allegations conflict with the record.

Plaintiff urges the Court to adopt a different interpretation of the medical record but does not convincingly show that the ALJ's decision was unsupported by substantial evidence. Specifically, plaintiff argues the ALJ erred by failing to incorporate significant evidence in the record substantiating her testimony about fatigue and pain, and a November 2020 prescription for  wheelchair. Pl. Br at 23-24. Plaintiff argues that "these issues were not analyzed," but overlooks that the ALJ considered how "[t]he medical evidence substantiates [her] allegations to a degree," and discounted those allegations somewhat based on countervailing medical evidence in the record. Plaintiff's further arguments that the record more strongly supports her version of events are an effort to have this Court re-weigh the evidence, which is beyond the scope of review. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ."). Even when there are two reasonable interpretations—plaintiff's and the ALJ's—the ALJ's interpretation must prevail. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). Against that backdrop, even though plaintiff clearly interprets the evidence differently, she has not (and cannot) establish error by simply advancing a different interpretation of the medical evidence. The ALJ adequately considered the evidence that supported plaintiff's allegations, identified medical evidence that conflicted with plaintiff's testimony about the extent and frequency of her fatigue and pain, and reasonably discounted those allegations when fashioning the RFC. *See* Tr. 24-25.

The ALJ also discounted plaintiff's subjective symptom testimony because it was inconsistent with her daily activities. Tr. 24. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021).

The ALJ reasonably concluded that several of plaintiff's daily activities conflicted with her testimony about fatigue, weakness, and pain. To discount a plaintiff's testimony, and ALJ must cite daily activities that "meet the threshold for transferable work skills" or "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639. The ALJ compared plaintiff's testimony about, for example, her inability to walk more than 15-20 minutes before needing to rest and need to lie down for an hour at a time (Tr. 42, 44-45, 52, 316) with evidence that she can prepare simple meals and perform a number of light household chores, such as washing dishes, dusting, folding the laundry, and shopping outside the home. Tr. 24 (citing Tr. 313-14). The ALJ also cited plaintiff's significant work history after the alleged onset date. Tr. 24. For several years after 2015, the year she allegedly became disabled, plaintiff worked as a personal care assistant, in an assisted living facility and as an officer manager for an oil company. Tr. 274-77, 279, 1826. Although plaintiff alleged she had problems doing these jobs (tr. 52), her ability to work is at odds with her allegations of constant pain and hardly able to lift or walk. Plaintiff disagrees,

again asking the Court to put a different weight on the evidence than the ALJ. Pl. Br. at 23. As noted above, that is beyond the scope of review. *Ahearn*, 988 F.3d at 1115. This was another clear and convincing reason for the ALJ to rely upon to discount plaintiff's testimony about the extent of his physical symptoms.[2]

## II. Step Three

Plaintiff also argues this case must be remanded because the ALJ did not properly consider whether her lupus met the criteria for Listing 14.02A at step three. Pl.'s Br. at 7-12. At step three, the ALJ determines whether a claimant's impairment or combination of impairments meets or equals the criteria for a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Where an impairment does so, it is per se disabling and the ALJ has no discretion in awarding benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d); *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990). To demonstrate that an impairment medically equals a listing, the claimant must show the impairment meets all of the medical criteria in that listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* "[To] equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) (quoting 20 C.F.R. §

---

[2] Plaintiff also challenges the ALJ's failure to articulate a reason for discounting her partner's testimony because it was "neither valuable nor persuasive in accordance with our regulations." Tr. 28. Failure to provide a germane reason for disregarding lay witness testimony is error. *Valentine*, 574 F.3d at 694. However, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Molina*, 674 F.3d at 1117, 1122. As discussed above, the ALJ provided sufficient reasons for concluding that plaintiff's testimony was unpersuasive. These reasons apply with equal force to the lay witness testimony. Any error in rejecting the lay witness testimony was therefore harmless. *Molina*, 674 F.3d at 1117, 1122.

404.1526(a)). Unless a claimant presents evidence in an effort to establish equivalence, an ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Listing 14.00 generally covers immune system disorders. Plaintiff contends that her impairments meet or medically equal Listing 14.02A pertaining to lupus. To satisfy Listing 14.02A, the claimant must prove that her lupus involves two or more organs/body systems, with (1) one of the organs/body system rising to at least a moderate level of severity and (2) the presence of at least two constitutional systems or signs, namely severe fatigue, fever, malaise, or involuntary weight loss. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 14.02A. In the written opinion, the ALJ found plaintiff had not identified severe enough symptoms across two organs/body systems to qualify. Tr. 22. Plaintiff believes this was error, and argues she carried her burden to show her lupus involved two body systems—her stomach and her immune system (inflammatory arthritis)—and her symptoms were severe enough to meet Listing 14.02A. Pl. Br. at 7-12.

The ALJ supported the decision that plaintiff's lupus did not meet Listing 14.02A with substantial evidence. Social security claimants bear the burden at step three to show "signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment." *Tackett*, 180 F.3d at 1099. Step three imposes "strict standards" to satisfy "because they automatically end the five-step inquiry before residual functional capacity is even considered." *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). The ALJ reasonably found that while plaintiff presented evidence of lupus, the medical record did not establish that her lupus was sufficiently severe to meet the criteria of Listing 14.02A. For example, several exams of plaintiff's abdominal system were unremarkable, or she denied symptoms. *See, e.g.*, Tr. 418, 423, 426, 430, 433, 436, 437, 442, 445, 448, 451, 515, 543, 660, 663, 706, 852, 880, 1031, 1039,

1041, 1052, 1106, 1168, 1173, 1177, 1182. Moreover, in April 2018, plaintiff attributed her abdominal pain and associated weight loss to recent surgery on her back, rather than lupus. Tr. 1070. In addition, despite her allegations of arthritic pain, she often walked with a normal gait, with full (or nearly full) muscle strength, had normal coordination, and normal musculoskeletal exams. Tr. 497-98, 503, 664, 705, 834-35, 840, 940, 1021, 1035, 1082, 1202, 1298, 1323, 1503, 1532, 1557, 1694, 1732, 1752. Further, plaintiff fails to show she had at least two constitutional systems or signs, namely severe fatigue, fever, malaise, or involuntary weight loss. In fact, many times, she denied fatigue, fever, and/or weight loss. Tr. 426, 430, 433, 436, 439, 441, 445, 448, 450, 455, 663, 1034, 1201, 1873. And, even though plaintiff reported feeling tired on occasions, she made no showing that her fatigue was "severe," as Listing 14.02 requires. The ALJ reasonably took these milder aspects of the medical record into account when finding plaintiff's limitations did not meet Listing 14.02A.

Plaintiff also argues the ALJ failed to offer a specific enough account of his reasoning at step three. Pl. Br. at 8. True enough, the ALJ provided only a brief boilerplate explanation without record citations in the step three portion of his opinion concluding that plaintiff did not meet Listing 14.02. Tr. 22 This is error unless the ALJ discusses evidence elsewhere in the opinion that supports the conclusion that plaintiff does not meet Listing 14.02. *See Lewis*, 236 F.3d at 512. Social Security Ruling 17-2p further notes that, when discussing medical equivalency, "[g]enerally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding" and the ALJ's later discussion of evidence may provide the necessary rationale. 2017 WL 3928306, at *5, Although the ALJ's conclusion in the step three portion of the opinion was brief, he elsewhere thoroughly reviewed the medical record and considered the severity of plaintiff's lupus-related symptom

allegations and medical records. Tr. 24-27. These records, including several unremarkable physical exams, amount to substantial evidence supporting the ALJ's decision that plaintiff was not disabled under Listing 14.02A. Tr. 22, 24-27. Because the ALJ supported his decision that plaintiff's lupus was not per se disabling at step three, the Court will not disturb the ALJ's opinion on this basis.

### III. Medical Opinion Evidence

Plaintiff also argues that the ALJ "failed to apply the proper legal standards" when evaluating the medical opinions of Dr. G. McCormack, M.D., and FNP Victoria Laporte. Pl. Br. at 12-22. For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. 20 C.F.R. § 404.1520c. Instead, the agency considers several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Under this framework, the ALJ must "articulate ... how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R § 404.1520c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported

or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

  *A. Dr. G. McCormack, M.D.*

  In early 2020, State agency medical consultant Dr. G. McCormack, M.D. reviewed plaintiff's medical records in connection with her disability claims. Tr. 72-75, 78-82, 91-94, 97-101, 117-21, 136-38. He concluded that plaintiff could perform a range of light exertional work with certain minor limitations. Tr. 72-75, 78-82, 91-94, 97-101, 117-21, 136-38. The ALJ found his opinion persuasive. Tr. 27. Plaintiff argues the ALJ erred by relying on Dr. McCormack's opinion because his opinion failed to acknowledge lupus as a medically determinable impairment[3] and improperly relied on her daily activities in concluding she was capable of light work. Pl. Br. at 15-17.

  The ALJ adequately discussed the strength of the evidence underlying Dr. McCormack's opinion and its consistency with other evidence in the record when finding it persuasive. The supportability factor requires ALJs to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion." 20 C.F.R. § 404.1520c(c)(1). The consistency factor requires the ALJ to assess medical opinions' alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). Regarding supportability, Dr. McCormack's opinion relied on the full medical record and offered a detailed evaluation of plaintiff's condition, citing the medical evidence and her own account of

---

[3] Even if this were error, that error was harmless because Dr. McCormack considered plaintiff's lupus and associated symptoms when making his findings. Tr. 75. Furthermore, the ALJ separately found plaintiff's lupus constituted a severe, medically determinable impairment and considered the lupus symptoms when crafting the RFC. Tr. 20, 27

her daily activities as support. Tr. 27, 72-75, 78-82, 91-94, 97-101, 117-21, 136-38. Not only

were Dr. McCormack's findings supported, but they were also consistent with the overall record.

Tr. 27.  While plaintiff's medical records showed that she had limitations, many times she

walked with a normal gait, had normal or almost normal strength, had full range of motion in her

musculoskeletal system, and/or was in no acute distress. Tr. 497-98, 503, 664, 705, 834-35, 840,

940, 1021, 1035, 1082, 1202, 1243, 1298, 1323, 1503, 1532, 1557, 1694, 1732, 1752. She

informed providers she had only a moderate degree of pain, especially when she took

medication. Tr. 318, 385, 394, 402, 406, 426, 429, 432, 495, 832. The ALJ adequately

considered the supportability and consistency of Dr. McCormack's opinion by examining the

bases for his conclusions and acknowledging their consistency with the overall record.

### B. Victoria LaPorte, FNP

In November 2020, FNP Victoria LaPorte completed a form about plaintiff's limitations.

Tr. 1952-60. This medical opinion found Claimant could occasionally lift five pounds, frequently

lift one pound, and sit 15 minutes at a time before needing to change positions. Tr. 1953-54. She

can stand around 4.5 minutes before needing to sit or walk around. Tr. 1954. Claimant's

manipulation was limited to seldom gross manipulation and never fine manipulation. Tr. 1956.

She can sit for normal breaks for around 15 minutes at a time. Tr. 1954. She would need a break

every hour and would miss 16.5 days of work every month. Tr. 1953. The ALJ found FNP

LaPorte's opinion unpersuasive as unsupported by medical evidence and inconsistent with the

record. Tr. 28.

The ALJ reasonably considered both the supportability and consistency of FNP LaPorte's

opinion when finding it unpersuasive. In terms of supportability, the ALJ noted that several of

FNP LaPorte's treatment notes did not support the significant limitations in her opinion. Tr. 28.

For example, in contrast to FNP LaPorte's conclusions that plaintiff was unable to walk or push or pull anything due to pain, her treatment records showed that plaintiff was often in no acute distress or only in mild distress, and that she felt "over 50%" relief with pain medication. Tr. 28 (citing Tr. 1217, 1229, 1243). In late 2018, FNP LaPorte characterized plaintiff's "functional level" as "improved on current therapy," and did not suggest she was as limited as she did in her November 2020 opinion. *Compare* Tr. 1952-60 *with* Tr. 1217. Regarding consistency, the ALJ noted that records from other medical sources likewise showed plaintiff was more capable than FNP LaPorte opined. For example, the ALJ noted that medical evidence showed plaintiff walked with a normal gait, had full (or nearly full) muscle strength, normal coordination, and normal musculoskeletal exams. Tr. 497-98, 503, 664, 705, 834-35, 840, 940, 1021, 1035, 1082, 1202, 1298, 1323, 1503, 1532, 1557, 1694, 1732, 1752. Further, the ALJ compared FNP LaPorte's conclusion that plaintiff could barely walk, would be off task "100%" of the time, and would need to rest for hours a day, with the fact that she worked after her alleged disability onset date and completed daily chores like cooking simple meals, cleaning, shopping, and folding laundry. Tr. 274-77, 279, 313-14. The ALJ also noted that, in late 2017, plaintiff reported to Ms. LaPorte she had been "carrying heavy furniture" and, during the summer of 2018, she went on a rafting trip. Tr. 493, 1093. The ALJ reasonably took this evidence into account when finding FNP LaPorte's opinion unpersuasive, and substantial evidence supported the ALJ's decision to do so.

### IV. Step Five

Plaintiff further argues the ALJ erred by failing to include relevant limitations related to her lupus and rheumatoid arthritis in the RFC. Pl. Br. at 26-27. The RFC is the most a person can do, despite the person's physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ must consider all medically determinable impairments, including

those that are not "severe," and evaluate "all of the relevant medical and other evidence,"
including the claimant's testimony. *Id.*; SSR 96-8p, available at 1996 WL 374184. In
determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical
testimony and translating the claimant's impairments into concrete functional limitations in the
RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

In formulating plaintiff's RFC, the ALJ reasonably relied on persuasive medical opinions
and the overall record to determine the most plaintiff could do, despite her limitations. Plaintiff
argues the ALJ erred by failing to include limitations the ALJ discredited elsewhere—that she
suffers from arthralgias, weakness, hand pain, and severe fatigue. Pl. Br. at 27. As discussed
above, however, the ALJ reasonably rejected plaintiff's version of these limitations, and
supported the decision to do so with substantial evidence. This step five argument merely
rehashes plaintiff's prior arguments about plaintiff's symptom testimony and the medical record
and therefore fails for the reasons previously articulated. *See Stubbs-Danielson*, 539 F.3d at
1175–76 (rejecting a step  five argument that "simply restates" arguments about medical
evidence and testimony); *Hairston v. Saul*, 827 Fed. App'x 772, 773 (9th Cir. 2020) (summarily
rejecting claimant's arguments that RFC and step-five findings were unsupported by substantial
evidence as "derivative of her preceding arguments addressed and rejected above."). Because
plaintiff's step five argument adds nothing new, the Court finds the ALJ did not err at step five.

**CONCLUSION**

For the reasons given above, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED: <u>August 28</u>, 2024

/s/ Jolie A. Russo
_____
Jolie A. Russo
United States Magistrate Judge
